IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BOBBY EARL KEYS, | ] |
| Petitioner, | ] |
| vs. | ] CIVIL ACTION NO. 02-KOB-RRA-0544-E |
| WARDEN MARTHA JORDAN[1], | ] |
| Respondent. | ] |

**MEMORANDUM OPINION**

This is a petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241. The petitioner, Bobby Earl Keys, is a federal prisoner serving a 177 month sentence imposed upon him in 1994, by the United States District Court for the Northern District of Mississippi. At the time he filed his petition, Keys was incarcerated at the Federal Correctional Institution in Talladega, Alabama. Keys has since been transferred to the Federal Correctional Institution in Miami, Florida.

The allegations in Keys' original petition are quite sketchy. He indicates that he is challenging prison disciplinary proceedings that are "affecting the fact or duration of [his] custody." Keys does not reveal the date of the disciplinary charges or the nature of the charges. However, it appears that he is referring to an incident on January 16, 2002, when he was placed into administrative detention pending an investigation into his being found in possession of 75 books of 34-cent stamps.[2] The court interprets the petition to make the following claims, all apparently related

---

[1] Although Keys named Attorney General John Ashcroft as the respondent in his petition, the proper respondent in this habeas corpus petition is the warden of the facility having custody over the petitioner at the time he filed the petition.

[2] Inmates are only permitted to possess $20.00 worth of personal property.

to his being held in administrative segregation: 1) he was held in administrative segregation without due process; 2) he was denied due process by the respondent's denying or delaying the administrative remedy process; 3) he has "been deprived of his constitutional rights under the Fourteenth [sic] amendment to be treat[ed] equal has [sic] enjoy[ed] by other prisoners"; 4) his central file has been altered with fabricated allegations that affect his security level and classification; 5) he is the victim of "discriminator[y] treatment, subject to repeatedly [sic] urine test[s]; 6) he has been unfairly labeled and singled out by the respondent, which has caused other staff members to react differently toward him; and 7) he filed a grievance form that "would not reach its destination or respondents would simply hold-up the process." As relief for the alleged violations, the petitioner requests to be released from administrative segregation and to have any prejudicial remarks removed from his central file.

In response to the court's order to show cause, the respondent filed an answer in which she argues that Keys has not exhausted the administrative remedies available to him and that the petition lacks merit and is due to be denied. By order of the court, the parties were advised that the respondent's answer would be treated as a motion for summary judgment. The petitioner was advised that he must comply with Rule 56 of the *Federal Rules of Civil Procedure* in responding to the motion for summary judgment.

In response, Keys filed an unsworn traverse on May 8, 2002, in which he states that he "does not challenge the disciplinary process of the two (2) incidents [sic] reports he have [sic] received since being confined at FCI Talladega, Alabama, in this proceeding." He concedes that "both of these incident reports" are on administrative appeal and are not before this court at this time. He states that on January 16, 2002, he was placed into administrative segregation pending an

-2-

investigation into his possession of 75 books of stamps. The following day, he was issued an incident report for possessing the stamps and on February 7, 2002, he was found guilty of that offense. As a result, he received 5 days of segregation and 180 days of commissary suspension. Keys states that he is challenging the "8 weeks plus the petitioner has spent in solitary or punitive segregation confinement" since no charges have been lodged against him and he has been found guilty of no wrongdoing other than that for which he received the disciplinary conviction and sentence. He reiterates that he is challenging only "the way the respondents [sic] has [sic] repeatedly held him in solitary or punitive confinement after the DHO finding, which failed to comport with [the] due process clause." He argues that he is not required to exhaust administrative remedies to bring such a claim in this court.

On May 23, 2002, Keys filed a motion to supplement his original petition. That motion was granted on May 29, 2002. In his supplement, Keys states that on November 16, 2001, he used another inmate's PIN number to place a telephone call on the inmate telephone system, in violation of prison policy. He claims that an incident report charging him with violating prison policy as a result of the telephone call is due to be expunged because it was not issued until November 28, 2001, long after the 24-hour deadline, and because the disciplinary hearing was not conducted within three working days. He requests that this incident report be expunged.

On July 29, 2002, Keys filed another motion to amend or supplement his petition. That motion was granted on July 31, 2002. In the second supplement to his petition, Keys claims that he was transferred to the Federal Correctional Institution in Miami, Florida, in retaliation for having filed this petition. He requests declaratory and injunctive relief for the alleged retaliatory transfer, but does not elaborate on the specifics on the relief he requests.

In response to the second supplement to his petition, the respondent has filed an answer in which she denies that Keys was transferred in retaliation for filing a habeas petition in this court. In his traverse, filed September 12, 2002, Keys refutes the respondent's position.

Keys first claims that after the stamp incident, he was held in administrative segregation without due process. He adds that while in administrative detention, the respondent allegedly violated his rights in several other ways. On January 16, 2002, the night Keys was discovered in possession of 75 books of stamps, he was placed into administrative detention pending an investigation into his possession of a large amount of cash or cash substitute. Keys was provided with a copy of the administrative detention order.

In a request for administrative remedy, dated January 22, 2002, Keys complained that he had been placed in isolation due to "his race or abuse of federal law." He added that the staff had "unjust[ly] or unfairly label[ed him] has [sic] a institution drug-dealer . . . because of the fact that Keys is a black African American, and that it is reasonable to assume that all balck [sic] deal in drugs." In a response from Warden Jordan, dated March 25, 2002, Keys was informed in part as follows:

> An investigation into your claim revealed no evidence to support your allegations that you are a victim of racial profiling. You were placed in the Special Housing Unit (SHU) for an investigation as to why you were in possession of an excessive amount of postage stamps, which could be indicative of criminal activity. You have been recommended for a transfer based on the incident report you received for possessing an excessive amount of postage stamps and the findings of the investigation conducted as a result of this incident report.
> Your classification and security level have not been affected by your placement in SHU. If you are transferred, it will be an administrative transfer, which will not affect your security level or classification.

The respondent maintains that after being placed in administrative detention, Keys received segregation reviews every 30 days, in accordance with 28 C.F.R. § 541.16 and Program Statement

5270.07.  The records reflect that weekly reviews of Keys' status, conducted in his absence, were held on January 23, 2002, January 30, 2002, February 5, 2002, February 12, 2002, February 25, 2002, March 4, 2002, March 11, 2002, and March 18, 2002.  On each occasion, the determination was that Keys should remain in special housing.  The records further reflect that monthly reviews of Keys' status, with Keys in attendance, were conducted on February 18, 2002 and March 25, 2002.  On each occasion, the staff determined that Keys should continue in special housing pending investigation.

     Federal inmates seeking habeas relief are required to exhaust the three-tier system of administrative remedy procedures before filing a petition in federal court.  The respondent argues and Keys admits in his "Traverse In Opposition to Respondent's Order to Show Cause" that he did not exhaust the appropriate administrative remedies with respect to his administrative detention claim.  Thus, the seven claims Keys raises with regard to his administrative detention are due to be dismissed for failure to exhaust administrative remedies.

     Additionally, the court finds that Keys' claims relating to his administrative detention are moot.  Keys is no longer confined in the SHU; therefore, there is no longer a case or controversy regarding these claims.

     Keys next claims that he was denied due process in connection with the telephone incident, because the incident report was not issued until November 28, 2001, long after the 24-hour deadline, and because the disciplinary hearing was not conducted within three working days.  The evidence reveals that on November 16, 2001, Keys was observed using another inmate's personal identifier number to make a telephone call.  He received an incident report on November 28, 2001, charging him with use of a telephone for abuses other than criminal use.  On November 29, 2001, the Unit

Disciplinary Committee (UDC) conducted a hearing and referred the matter to the Discipline Hearing Officer (DHO) for a hearing a disposition. The same day, Keys was advised of his due process rights and signed documents entitled "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the Discipline Hearing Officer." Keys did not request a staff representative and did not wish to have any witnesses appear at his scheduled disciplinary hearing.

On December 5, 2001, Keys appeared before the DHO for his disciplinary hearing. Keys made a statement at the hearing, admitting to using another inmate's personal identifier number to make a telephone call. The DHO determined that Keys had committed the prohibited act and imposed sanctions of loss of telephone privileges for six months. Keys was notified of his appeal rights and the DHO's report was delivered to him on December 13, 2001.

"The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 455 U.S. 992 (1982). Instead, when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by *Wolff [v. McDonnell*, 418 U.S. 539 (1974),] and whether 'some evidence' exists which supports the hearing officer's determination." *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994), *cert. denied*, 115 S. Ct. 1437 (1995).

In *Wolff v. McDonnell*, the Supreme Court set forth the following minimum due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of a protected liberty interest such as good time credits: (1) "written notice of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; (2) the inmate "should be

allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66.

Keys claims that his due process rights were violated because the incident report was not issued until November 28, 2001, long after the 24-hour deadline. *Wolff* requires that "written notice of the charges must be given" to the inmate at least 24-hours in advance of the disciplinary proceeding. Keys received notice of the charges on November 28, 2001. The disciplinary hearing was not held until December 5, 2001. Thus, Keys received more than the required 24-hour written notice of the charges against him. This claim is due to be dismissed.

Keys next claims that his due process rights were violated when the disciplinary hearing was not conducted within three working days. The due process clause does not require that disciplinary hearings be held within any certain time frame. *See Wolff*, 418 U.S. at 564-66. Therefore, this claim is due to be dismissed.

Keys' final claim is that he was transferred to another prison in retaliation for having filed this petition. He has offered nothing more than conclusory allegations to support a claim of retaliatory transfer. Conclusory allegations of retaliation are insufficient to state a claim for relief. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). This claim is due to be dismissed.

An appropriate order will be entered.

DONE and ORDERED this 30th day of September 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

-8-